# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **RICHARD RIEMER,** | |
| Plaintiff, | No. 10 C 6150 |
| v. | Magistrate Judge |
| | Jeffrey Cole |
| **CHASE BANK USA , N.A.,** | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Richard Riemer, had a credit card issued by the defendant, Chase Bank. He alleges he was the victim of identity theft and that about $60,000 in fraudulent charges appeared on his account. Although Chase recovered nearly all of that amount and "charged off" the remainder – $1199.80 – it refused to reverse just over $30,000 of the fraudulent charges. The plaintiff has sued Chase under the unauthorized use of a credit card provision of the Truth In Lending Act and has added state law claims for specific performance, unjust enrichment, and promissory estoppel. Chase has moved to dismiss those last state law claims.

In February 2010, Chase issued plaintiff a credit card bearing account number 7022. On or about April 5, 2010, plaintiff notified Chase of numerous unauthorized charges that had appeared on the 7022 account beginning February 14, 2010, to that date. As already noted, plaintiff claims he was the victim of identity theft and did not authorize any of the disputed transactions on account 7022. Chase did not close the account when so notified, and additional unauthorized charges

1

appeared between April 5 and April 13, 2010. Plaintiff again contacted Chase to notify them of unauthorized charges. This time, Chase closed the account. (*Complaint*, ¶¶ 6-11).

On or about April 19, 2010, Chase acknowledged in writing that plaintiff had notified it of unauthorized activity on account 7022 and confirmed that it had closed the account. On April 19, 2010, Chase's "Fraud Operations" department sent plaintiff an Affirmation of Unauthorized Use seeking confirmation as to the charges plaintiff claimed were unauthorized. Chase requested plaintiff to identify any additional unauthorized charges on account 7022 that were not listed on the Affirmation of Unauthorized Use. Just four days later, before plaintiff had a chance to respond, Chase informed plaintiff that: "[C]ertain items or balances previously stated to be fraudulent in nature have been found to be legitimate. For this reason, we have now transferred the balance to a 'new' account. This adjustment may be found on your forthcoming statement." (*Complaint*, ¶¶ 12-15).

On or about April 23, 2010, Chase transferred all the unauthorized charges to a new Chase credit card account –account number 4121– as reflected on plaintiff's April 23, 2010 billing statement from Chase. In that statement, Chase reversed only 70 of the 263 unauthorized charges plaintiff identified. On May 10, 2010, plaintiff, through his counsel, informed Chase in writing that plaintiff continued to dispute the unauthorized charges, and that he intended to submit his Affirmation of Unauthorized Use shortly. He did so on May 18th, and identified 263 unauthorized charges totaling $52,851.91. In the May 23, 2010, billing statement, Chase reversed an additional 31 charges, making it 101 out of the fraudulent 263. (*Complaint*, ¶¶ 16-24).

On June 21, 2010, Chase informed plaintiff's counsel in writing that it had identified the "Fraud" amount as $59,851.61, that it had recovered $58,651.81 of that amount, and that CHASE

was charging off the remaining $1,199.80 from plaintiff's account. On that same day, Chase also told plaintiff that it had agreed to reverse all of the unauthorized charges appearing on account 7022 that Chase had transferred to account 4121, and that the credits would appear on Account 4121 over the course of the next one to two billing cycles. In the June 23, 2010 billing statement, Chase reversed an additional three (3) unauthorized charges identified by plaintiff, bringing the total reversed charges up to 104 of 263 total unauthorized charges. But Chase never made any further credits relating to the unauthorized charges in subsequent billing statements. Instead, Chase sent plaintiff a letter demanding payment on Account 4121 on July 26, 2010. (*Complaint*, ¶¶ 25-28).

The next thing plaintiff heard from Chase, on August 2, 2010, was that all of the unauthorized charges should have been reversed on account 4121 and that Chase would "make those adjustments right away." Nevertheless, on August 13, 2010, and September 3, 2010, Chase sent plaintiff letters demanding payment on Account 4121. As of the date of plaintiff's complaint, Chase has reversed 104 of 263 unauthorized charges on plaintiff's account, totaling $20,938.84. That leaves 159 unauthorized charges totaling $31,913.07 outstanding. (*Complaint*, ¶¶ 29-31).

When evaluating the sufficiency of the complaint, we construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in his favor. *See Hemi Group, LLC v. City of New York,* – U.S. –, –, 130 S.Ct. 983, 986-87 (2010); *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). To survive a motion to dismiss, the plaintiff must do more than simply recite elements of a claim; the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* — U.S. — , 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "[T]he plaintiff must give enough details about the subject-matter of the case to present

3

a story that holds together," and the question the court should ask is "*could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404-05 (7th Cir.2010) (emphasis in original).

Chase first argues that plaintiff's unjust enrichment and promissory estoppel claims must be dismissed because the parties have a card member agreement ("CMA") that covers their dealings. They submit that even though plaintiff did not attach the CMA to his complaint or even refer to it, the court may still consider it under *Minch v. City of Chicago*, 486 F.3d 294 (7th Cir. 2007) and *Tierney v. Vahle*, 304 F.3d 734 (7th Cir. 2002). Those cases state that a court may consider a written contract in ruling on a motion to dismiss without converting it to a motion for summary judgment when the claim either refers to or rest on that contract. *Minch*, 486 F.3d at 300 n.3; *Tierney*, 304 F.3d 738-39.[1] But plaintiff's allegations do not rest on the CMA. They rest on promises and assurances that Chase purportedly made to plaintiff following their investigation into the fraudulent charges. According to the complaint, Chase promised to reverse the fraudulent charges on plaintiff's account, having recovered nearly the full amount.

The two cases Chase cites for the proposition that plaintiff's unjust enrichment and promissory estoppel claims fail simply because there is a written agreement do not support its position. After making a point of arguing that Delaware law controls the parties' dispute and that plaintiff has conceded this point, Chase relies on a case in support of its argument against plaintiff's

---

[1] Chase attached a copy of the CMA to its motion to dismiss. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)(documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim). The CMA may be central to *Chase's* position, but because it is not a part of plaintiff's claim, it will be a matter for summary judgment or trial.

4

unjust enrichment claim that applies New York law, *Central Mortgage Company v. Morgan Stanley Mortgage Capital Holdings LLC*, 2010 WL 3258620, *11 (Del.Ch. 2010). (*Memorandum in Support of Chase's Motion to Dismiss*, at 6). Along these lines, Chase also relies on a case applying Pennsylvania law – *Peoples v. Discover Financial Services, Inc.*, 387 Fed.Appx. 179, 184-185, 2010 WL 2812906, *3 (3rd Cir. 2010) – to demonstrate that plaintiff accepted the terms of the CMA. *(Memorandum in Support of Chase's Motion to Dismiss*, at 7). It may well be that Delaware law is no different on these points, but a district court may "flatly refuse to undertake [its] own examination of [applicable] law . . . ." *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002).

But even if *Central Mortgage* were applicable here, the case dealt with a situation where the plaintiff's allegations "f[e]ll[] directly within the scope" of the parties' agreement. 2010 WL 3258620, *11. Plaintiff's allegations here, as noted above, cover representations Chase made to him during the course and at the conclusion of its fraud investigation, representations that suggested it found the charges fraudulent and would be reversing them in their entirety.

Similarly, the case Chase cites in support of dismissal of plaintiff's promissory estoppel claim, *Weiss v. Northwest Broadcasting Inc.*, 140 F.Supp.2d 336 (D.Del. 2001), involved allegations that directly contradicted the terms of the parties' agreement. But Chase's brief does not point to any portion of the parties' agreement that plaintiff's allegations contradict, or that plaintiff's allegations fall directly within the scope of. It simply argues that it conducted its investigation into the disputed charges, concluded they were legitimate, and re-billed plaintiff's account. But, that's not what it communicated to plaintiff, and that's what plaintiff's allegation are about.

It's worth a moment to take a look at what Chase suggests is the applicable provision of the CMA. Under the section of the CMA referring to "mistakes on a statement", the agreement states that following an investigation:

> <u>If we made a mistake</u>: You will not have to pay the amount in question or any interest or other fees related to that amount.
>
> <u>If we do not believe there was a mistake</u>: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

(*Memorandum in Support of Chase's Motion to Dismiss*, Ex. A-1, at 4). It's not clear if identity theft and fraudulent charges qualify as a "mistake."[2] And even if they do, according to the allegations of the complaint and the letter from Chase attached to the complaint, Chase categorized over $59,000 of the charges as fraudulent and indicated it had recovered all but about $1200 of that amount. So, by all appearances, it would certainly seem that they did not believe there was a mistake and that plaintiff should not have been responsible for the charges in any event.

Chase's story appears to be that when it said it "recovered" the fraudulent charges, it meant it would be charging them against the plaintiff's new account. (*Memorandum in Support of Chase's Motion to Dismiss*, at 7). That seems a bit of a stretch for the term "recovered" and it is also seems curious that the credit card company would "recover" charges it identified as fraudulent from the victim of the fraud. But, in any event, whether that's what actually happened and whether Chase adequately communicated that to the plaintiff is not a matter that can be resolved on a motion to dismiss. Based on the allegations of the complaint, it's not what transpired. Because Chase's

---

[2] Moreover, Chase concedes that the CMA it attached to its motion to dismiss does not even cover the entire time period during which the fraudulent charges were made. (*Memorandum in Support of Chase's Motion to Dismiss*, Ex. A, at ¶5, Ex. A-1, at 1). This is a flaw that undermines its motion to dismiss.

6

version of what happened – *i.e.*, what it meant by recovering on the fraudulent charges – is the basis for its argument for dismissal of plaintiff's specific performance claim (*Memorandum in Support of Chase's Motion to Dismiss*, at 8), that argument is not persuasive.

As the motion to dismiss is now drafted, it must be denied. This is not to say that perhaps there are not other arguments that might be more meritorious or that the theory of the state law counts can ultimately carry the day. But, the Seventh Circuit has cautioned judges that they are not to go beyond the briefs. *See Fabriko Acquisition Corporation v. Prokos* 536 F.3d 605, 609 (7th Cir. 2008); *Kay v. Board of Educ. of City of Chicago*, 547 F.3d 736, 738 (7th Cir. 2008); *Hartmann v. Prudential Ins. Co. of America*, 9 F.3d 1207, 1214 (7th Cir. 1993). For now, the case must proceed.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss Counts II, III, and IV of plaintiff's complaint [Dkt. # 14] is DENIED.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE: 5/5/11